UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| M2V MEDIA, LLC,<br>                              Plaintiff,<br><br>- against-<br><br><br><br>JESSICA ASHLEY KARPOV p/k/a<br>JESSICA ASHLEY, p/k/a HARLOE,<br><br>                              Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:26-cv-04723<br><br>CIVIL ACTION<br><br><br>**COMPLAINT** |

As and for Plaintiff's Complaint, Plaintiff hereby alleges as follows:

## **PARTIES**

1.     Plaintiff M2V Media, LLC ("Plaintiff" or "M2V") is a California limited liability company whose principal place of business is 3000 Marcus Avenue, Lake Success, New York.

2.     Defendant Jessica Ashley Karpov p/k/a Jessica Ashley p/k/a Harloe ("Defendant" or "Ashley") is over the age of 18, and, upon information and belief, is a citizen and resident of the State of New York.

## **NATURE OF THE ACTION**

3.      This is an action for a Declaratory Judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-02, declaring Plaintiff to be the owner of fifty percent (50%) of all rights in certain musical compositions authored in whole or in part by Defendant, including but not limited to the compositions identified in the attached **Exhibit A** (the "Compositions"), as well

as the compositions authored in whole or in part by Defendant identified below as the "Next Era Compositions"; for breach of contract; and for tortious interference with an existing economic relationship under New York law.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338, the Federal Declaratory Judgment Act, 28 U.S.C. §2201-02 and the U.S. Copyright Act of 1976, 17 U.S.C. §101 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367, with respect to the claims asserted herein that arise under state law, because such claims arise from the same case or controversy and a common nucleus of operative facts.

5.     Personal jurisdiction over Defendant and venue are proper in this Judicial District because Ashley granted ownership of 50% of her rights in the Compositions to Plaintiff in a written agreement dated April 1, 2013 ("Agreement"), attached here as **Exhibit B**, which provides for exclusive jurisdiction in the state and federal courts located in New York.

## STATEMENT OF FACTS

6.     The Compositions were written wholly or in part by Ashley. No co-writers of the Compositions, if any, are parties to this action.

7.     On or about April 1, 2013 Ashley assigned, transferred and conveyed to Plaintiff "an undivided Fifty (50%) percent of the copyright" in the Compositions ("Copyright Rights"), and separately conveyed 100% of the "administration rights throughout the world" in the Compositions ("Administration Rights"). This assignment was memorialized in the Agreement.

8.     The Agreement was executed by Nocturne Media Group, Ltd. "f/s/o Jessica Karpov, performing under the name 'Jessica Ashley'," and Defendant Ashley initialed each page

2

and signed as "Jessica Karpov, p/k/a Jessica Ashley, an individual, as immediate and unconditional guarantor of and agreeing to be personally bound by the above Agreement to the extent it refers to or concerns her, as if she had been party thereto."

9.    The Agreement was subsequently amended on or about March 26, 2014 (the "2014 Amendment") to modify the term, the royalty rate, and other provisions if Defendant Ashley entered into a recording agreement with Epic Records.

10.    As with the Agreement, the 2014 Amendment was executed by Nocturne Media Group, Ltd. "f/s/o Jessica Karpov, performing under the name 'Jessica Ashley'," and Defendant Ashley initialed each page and signed as "Jessica Karpov, p/k/a Jessica Ashley, an individual, as immediate and unconditional guarantor of and agreeing to be personally bound by the above Agreement to the extent it refers to or concerns her, as if she had been party thereto."

11.    On or about October 1, 2015, M2V entered into an administration agreement ("Kobalt Agreement") with Kobalt Music Services America, Inc. ("Kobalt") granting Kobalt certain Administration Rights in the Compositions, which M2V had acquired, along with the Copyright Rights, under the Agreement.

12.    The Kobalt Agreement was executed by M2V and Kobalt, and subsequently amended on or about May 27, 2020, with Defendant separately executing a Letter of Inducement attached as an exhibit, whereby she agreed to the contents and obligations of the Kobalt Agreement, and further agreed that "all payments made under the [Kobalt] Agreement shall be made to [M2V] on my behalf in absolute discharge of Kobalt's obligations" thereunder.

13.    On or about May 7, 2020, M2V and Ashley executed a further amendment to the Agreement, ("2020 Amendment") in which Ashley warranted and represented that Nocturne Media Group, Ltd. ("NMG") "no longer has and will not hereafter claim any interest in the

3

Agreement or to your services as a songwriter and accordingly you have succeeded to NMG's interest in the Agreement as though you and we were the sole signatory of same."

14. At all times since the execution of the Agreement, the 2014 Amendment and the 2020 Amendment (collectively, the "Amended Agreement") Plaintiff M2V has materially performed its obligations under the Amended Agreement including without limitation by accounting and paying royalties to Ashley in connection with the exploitation of the Compositions as provided in the Amended Agreement.

15. On or about March 22, 2021, M2V provided Defendant Ashley with the requisite Artist and Publishing Statements for the period ending December 31, 2020.

16. On or about April 6, 2021, counsel for Defendant Ashley first raised questions about certain aspects of the Artist and Publishing Statements issued by Plaintiff.

17. By letter dated November 15, 2021, counsel for Defendant Ashley purported to terminate the Amended Agreement, citing M2V's alleged failure to adhere to certain terms thereof in connection with the Administration Rights.

18. Counsel for M2V responded by email dated December 7, 2021, rejecting the allegations of breach, asserting that Ashley's purported termination was itself a material breach of the Amended Agreement, and inviting Ashley to audit M2V's books and records to the extent of her contractual right to do so.

19. Ashley did not accept M2V's invitation to audit its books and records in 2021, and has never sought to do so before or since.

20. At all times before and since Ashley first raised her false claims as above alleged, Plaintiff has continued to perform its obligations under the Amended Agreement in all material

respects, and Ashley has continued to accept payments tendered by Plaintiff under the Amended Agreement.

21.     Despite Plaintiff's performance of its obligations as above alleged, Ashley's counsel has sporadically resurfaced to make additional false and baseless allegations that Plaintiff was in breach of its obligations to properly manage the Administration Rights under the Amended Agreement.

22.     On or about January 14, 2026, Ashley's counsel transmitted to Plaintiff's counsel a demand stating that the Amended Agreement is terminated and rescinded in its entirety because of Plaintiff's alleged failure to properly manage the Administration Rights.

23.     In fact, Ashley had no right under the Amended Agreement or at law to rescind her grant of ownership of the Composition rights to Plaintiff, having assigned those rights to Plaintiff in the Amended Agreement, separate and apart from the Administration Rights.

24.     While the Amended Agreement was still in full force and effect, Ashley entered a purported agreement with a competitor of Plaintiff, Next Era Music Publishing ("Next Era Agreement").

25.     Upon information and belief, under the Next Era Agreement, Ashley purported to convey rights in the Compositions to Next Era that are inconsistent with the rights that Ashley granted to Plaintiff under the Amended Agreement, which remains in full force and effect.

26.     Since approximately 2021, Ashley has delivered no compositions to Plaintiff.

27.     Upon information and belief, since ceasing to deliver compositions to Plaintiff as alleged above, Ashley has delivered one or more compositions to Next Era under the purported Next Era Agreement ("Next Era Compositions"), in violation of her obligations to provide

exclusive songwriting services to Plaintiff under the Amended Agreement, which remains in full force and effect.

28.    Upon information and belief, third parties have been confused as to the parties' respective rights in the Next Era Compositions.

## CAUSES OF ACTION
## COUNT I: DECLARATORY JUDGMENT OF 50% COPYRIGHT OWNERSHIP

29.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-28 above.

30.    The conflicting positions of Plaintiff and Ashley are actual, immediate, and substantial, and a justiciable controversy exists over the opposing parties' respective rights with respect to ownership of the Compositions.

31.    There is a current, definite and concrete controversy between Plaintiff and Ashley having adverse legal interests, and the controversy is sufficiently immediate and real to warrant the issuance of a Declaratory Judgment under 28 U.S.C. § 2201.   The controversy is amenable to specific relief through a decree of a conclusive character.

32.    Ashley's claims of 100% copyright ownership in the Compositions are without legal foundation.   Plaintiff is the owner of 50% of the copyright in the Compositions that are the subject matter of this Complaint.

33.    A Declaratory Judgment in this case would serve a useful purpose in clarifying and settling the respective rights and obligations of the parties, and will terminate and afford relief from the uncertainty that is resulting from this controversy upon the Plaintiff, which has invested substantial money and its time, effort and expertise in developing and administering the market for the Compositions.

34.    Plaintiff requests the Court to enter a Judgment and Order that (i) Plaintiff is the owner of 50% of the copyright in the Compositions, pursuant to the Amended Agreement; (ii) Plaintiff is entitled to quiet title to the ownership of 50% of the copyright in and to the Compositions; and (iii) restraining and enjoining Ashley from asserting any rights of 100% ownership of the Compositions.

35.    Plaintiff has no adequate remedy at law.

### COUNT II: DECLARATION OF 50% OWNERSHIP OF THE NEXT ERA COMPOSITIONS

36.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-35 above.

37.    The conflicting positions of Plaintiff and Ashley are actual, immediate, and substantial, and a justiciable controversy exists over the opposing parties' respective rights with respect to ownership of the Next Era Compositions.

38.    There is a current, definite and concrete controversy between Plaintiff and Ashley having adverse legal interests, and the controversy is sufficiently immediate and real to warrant the issuance of a Declaratory Judgment under 28 U.S.C. § 2201.   The controversy is amenable to specific relief through a decree of a conclusive character.

39.    Ashley's purported grants of rights to Next Era in the Next Era Compositions are without legal foundation.   Plaintiff is the owner of 50% of the copyright in the Next Era Compositions.

40.    A Declaratory Judgment in this case would serve a useful purpose in clarifying and settling the respective rights and obligations of the parties, and will terminate and afford relief from the uncertainty that is resulting from this controversy upon the Plaintiff, which has

invested substantial money and its time, effort and expertise in developing and administering the market for compositions written wholly or partly by Ashley.

41.     Plaintiff respectfully requests the Court to enter a Judgment and Order that (i) Plaintiff is the owner of 50% of the copyright in the Next Era Compositions, pursuant to the Amended Agreement; (ii) Plaintiff is entitled to quiet title to the ownership of 50% of the copyright in and to the Next Era Compositions; and (iii) restraining and enjoining Ashley or her successors, licensees or assigns from asserting any rights of 100% ownership of the Next Era Compositions.

42.     Plaintiff has no adequate remedy at law.

### COUNT III: TORTIOUS INTERFERENCE
### WITH EXISTING ECONOMIC RELATIONSHIP
### BETWEEN PLAINTIFF AND BMI

43.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-42 above.

44.     At all relevant times, Plaintiff had an existing economic relationship with Broadcast Music, Inc. ("BMI") with respect to the Compositions, because Plaintiff, as publisher and administrator of the Compositions, granted BMI written authorization, under a written agreement ("BMI Agreement") to issue licenses to third parties for broadcasting and otherwise publicly performing the Compositions in the U.S. ("Performance Licenses").

45.     Under the BMI Agreement, BMI made payments to Plaintiff for the "publisher's share" of income collected by BMI from the Performance Licenses ("Publisher's Share").

46.     Upon information and belief, Ashley falsely advised BMI that Plaintiff was no longer the publisher or administrator of the Compositions, and instructed BMI to begin paying the Publisher's Share to a third party rather than to Plaintiff (the "BMI Interference").

47.     At the time of the BMI Interference, the BMI Agreement with Plaintiff was in full force and effect.

48.     At the time of the BMI Interference, Ashley knew of the BMI Agreement and the existing economic relationship between Plaintiff and BMI.

49.     Upon information and belief, Ashley, by her acts as described above, including but not limited to her BMI Interference, intentionally interfered with Plaintiff's existing economic relationship with BMI.

50.     Ashley's acts as described above, including but not limited to her BMI Interference, were wrongful and improper.

51.     As a result of Ashley's actions, BMI has discontinued making payments of the Publisher's Share to Plaintiff.

52.     Plaintiff has been damaged by Ashley's tortious acts in an amount to be determined at trial, because such acts have injured Plaintiff's existing economic relationship with BMI.

**COUNT IV: TORTIOUS INTERFERENCE**
**WITH EXISTING ECONOMIC RELATIONSHIP**
**BETWEEN PLAINTIFF AND KOBALT**

53.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-52 above.

9

54.     At all relevant times, Plaintiff had an existing economic relationship with Kobalt with respect to the Compositions, because Plaintiff, as publisher and administrator of the Compositions, granted Kobalt written authorization, under a written agreement ("Kobalt Agreement") to issue licenses to third parties for exploiting the Compositions in the U.S. ("Kobalt Licenses").

55.     Under the Kobalt Agreement, Kobalt made payments to Plaintiff for income collected by Kobalt the Kobalt Licenses ("Kobalt Payments").

56.     Upon information and belief, Ashley falsely advised Kobalt that Plaintiff was no longer the publisher or administrator of the Compositions, and instructed Kobalt to begin paying the Kobalt Payments to a third party rather than to Plaintiff (the "Kobalt Interference").

57.     At the time of the Kobalt Interference, the Kobalt Agreement with Plaintiff was in full force and effect.

58.     At the time of the Kobalt Interference, Ashley knew of Kobalt Agreement and the existing economic relationship between Plaintiff and Kobalt.

59.     Upon information and belief, Ashley, by her acts as described above, including but not limited to her Kobalt Interference, intentionally interfered with Plaintiff's existing economic relationship with Kobalt.

60.     Ashley's acts as described above, including but not limited to her Kobalt Interference, were wrongful and improper.

61.     As a result of Ashley's actions, Kobalt has discontinued making payments of the Kobalt Payments to Plaintiff.

62.     Plaintiff has been damaged by Ashley's tortious acts in an amount to be determined at trial, because such acts have injured Plaintiff's existing economic relationship with Kobalt.

## COUNT V – BREACH OF CONTRACT

63.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-62 above.

64.     Plaintiff has materially performed all of its contractual obligations under the Amended Agreement to the extent not excused.

65.     Ashley has breached her contractual obligations to Plaintiff under the Amended Agreement by, *inter alia*, entering into the Next Era Agreement, and delivering her compositions to Next Era rather to Plaintiff.

66.     As a direct and proximate result of Ashley's breaches of contract, Plaintiff has been and continues to be damaged, including without limitation by the loss of revenue it would have earned but for Ashley's actions as alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter Judgment for Plaintiff as follows:

(A)   Declaring that Plaintiff M2V is the rightful and sole owner of 50% of the copyright in and to the Compositions.

(B)   Declaring that Plaintiff M2V is the rightful and sole owner of 50% of the copyright in and to the Next Era Compositions.

(C)    Restraining and enjoining Defendant from claiming 100% rights of ownership of the Compositions, or the Next Era Compositions, or of otherwise infringing Plaintiff's rights therein.

(D)    Finding that Defendant has tortiously interfered with an existing economic relationship between Plaintiff and BMI in connection with the Compositions.

(E)    Finding that Defendant has tortiously interfered with an existing economic relationship between Plaintiff and Kobalt in connection with the Compositions.

(F)    Awarding damages to Plaintiff in an amount to be determined.

(G)    Awarding to Plaintiff its attorney's fees, plus costs, disbursements, and expenses as permitted by law, as set forth under the Amended Agreement or otherwise provided by law.

(H)    Awarding such other and further relief as the Court may deem appropriate.


Dated:    June 4, 2026

Respectfully submitted,

*/s/ Robert W. Clarida*
Brian D. Caplan
Robert W. Clarida
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050
(212) 371-5500 (fax)

*Attorneys for Plaintiff*

12